UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

REGINA D. WEBB,

    Plaintiff,

v.                                                 Case No. 14-12332

                                                  HON. AVERN COHN

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

_____/

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (Doc. 12) AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (Doc. 11)**

## I. INTRODUCTION

This is a social security case. Plaintiff Regina Webb (Plaintiff) appeals from the final decision of the Acting Commissioner of Social Security (Commissioner) denying her application for Disability Insurance Benefits (DIB) under the Social Security Act. Plaintiff claims disability since June 8, 2012, due to carpal tunnel syndrome (CTS), depression, and anxiety disorders. (Doc. 8-2, ID 44)

The parties filed cross motions for summary judgment. (Docs. 11, 12) The motions were referred to a Magistrate Judge (MJ) for a report and recommendation (R&R). The MJ recommends that the Court deny Plaintiff's motion for summary judgment, grant the Commissioner's motion, and affirm the decision pursuant to 42 U.S.C. § 405(g).

Now before the Court is Plaintiff's Objections to the R&R. (Doc. 16) For the

1

following reasons, the Court will adopt the R&R as the findings and conclusions of the Court, supplemented as follows.

## II. BACKGROUND

The R&R set forth the facts, many of which are repeated here. Plaintiff applied for DIB on June 11, 2012, asserting that she was disabled and unable to work since June 8, 2012, due to her CTS, anxiety, and depression. (Doc. 8-2, ID 42, 44, 52) The Social Security Administration (SSA) denied Plaintiff's claim; Plaintiff requested a hearing before an Administrative Law Judge (ALJ). The request was granted.

After considering the evidence presented at the hearing and in the record, the ALJ determined that Plaintiff was not entitled to disability benefits because she retained the residual functional capacity to perform a full range of light work.[1] (*Id.* at 52) The ALJ relied on the opinion of a vocational expert, who testified that "[Plaintiff was] able to perform the requirements of representative light, unskilled occupations such as an administrative support worker." (*Id.*) Plaintiff requested a review of the ALJ's decision. The Appeals Council (AC) declined to review Plaintiff's case, finding no reason to disturb the findings of the ALJ. Plaintiff filed the instant action for judicial review of the denial of benefits.

### A. The Record Before the ALJ

In reaching her decision, the ALJ considered Plaintiff's testimony, weighed the

---

[1] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities." 20 CFR 404.1567(b).

medical assessments, and evaluated Plaintiff's credibility as described below.

### *1. Plaintiff's Testimony*

Plaintiff was 50 years old at the time of the administrative hearing. She received a high school education and was employed by the City of Flint performing street maintenance and was reassigned to a clerical position after a period of workers' compensation as a "make work" job, designed specifically in a restricted capacity for city workers who had previously been on workers' compensation. (*Id.* at 60) Plaintiff began her clerical position on June 2006 and she stopped working on June 8, 2012.

At the administrative hearing, Plaintiff testified that she is unable to work due to a combination of symptoms. She stated that her CTS caused pain in her hands with recurrent numbness and weakness. (*Id.* at 44) Plaintiff testified her physical limitations prevented her from working and interfered seriously with her ability to perform daily tasks. She noted that, due to her CTS, she was unable to lift more than 5-10 pounds for more than a few minutes. (*Id.* at 48) She reported no problems walking or standing, and that her daily activities include light chores such as laundry and dish washing. (*Id.* at 80-82) Plaintiff testified that while doing clerical work, her responsibilities included answering about four or five phone calls in an eight-hour day, as well as filing mail and waiting on customers. (*Id.* at 81) Plaintiff stopped working when the restricted employment ended on June 8, 2012. Plaintiff also testified that she was suffering from anxiety and depression, which caused considerable problems with activities of daily living, and that on several days per month, she was unable to perform most activities. (*Id.* at 46)

3

### *2. Physical Assessments*

The ALJ considered Plaintiff's medical history, including the opinions of several physicians. The ALJ observed that Plaintiff's medical records reflect a history of "moderate" bilateral CTS dating back to 2002. (*Id.* at 44) The ALJ noted that this condition had been treated through Plaintiff's primary care provider with pain medication and nocturnal wrist braces.

The ALJ's decision referenced EMG studies by Nael M. Tarakji, M.D., dating from August 2002 and May 2012, and from D. V. Pasupuleti, M.D., dating from March 2004, stating that although Plaintiff exhibited evidence of CTS, Plaintiff's symptoms were only "moderate" in severity. (Doc. 8-7, ID 249, 291, 295)

The ALJ also referenced medical reports by Plaintiff's primary care physician Elmadhi Saeed, M.D., dating from August 2011 to December 2013. In February 2012, Dr. Saeed stated that Plaintiff complained of symptoms of CTS that had surfaced "months ago." (*Id.* at 260) The exam revealed that Plaintiff had a tender left wrist that was consistent with CTS. (*Id.* at 262) Dr. Saeed stated that although Plaintiff's CTS symptoms were chronic, they only moderately limited Plaintiff's activities. (*Id.*) The same diagnosis was repeated in March and May 2012. (*Id.* at 254, 257) Similarly, in August and September 2012, and in May, July, and September 2013, Dr. Saeed again described Plaintiff's symptoms of CTS in both hands, however noting that these symptoms only moderately limited her activities. (*Id.* at 350, 359, 362, 368, 371)

In October 2012, Quan Nguyen, M.D., a consultant for the State agency, reviewed Plaintiff's medical records and opined that she was capable of lifting 10

4

pounds frequently and 20 occasionally, with an unlimited ability to push or pull within those weight restrictions. (Doc. 8-3, ID 107) He further found she could only occasionally climb ladders, ropes or scaffolds, but had unlimited ability to engage in other postural activities. (*Id.* at 108) She was limited to only frequent handling due to her CTS but had no limitation to fine manipulation using her fingers. (*Id.*)

### *3. Mental Assessments*

Relevant here, the ALJ noted that in May and June 2011, Plaintiff's psychiatrist, Nikhil Vora, M.D., observed that Plaintiff had a dysphoric mood and flat affect, but showed no signs of psychosis and had fair psychomotor functioning and insight. (*Id.* at 338-39) In September 2011, Plaintiff was discharged from care because her condition had improved. (*Id.* at 329) Plaintiff was assigned a Global Assessment of Functioning (GAF) score of 70[2] and was not required to follow a discharge plan. (*Id.*)

The ALJ noted that Plaintiff did not seek therapy services again until January 2014. Plaintiff return to Dr. Vora, who completed a check-box questionnaire in which he rated Plaintiff's ability as "poor" or "none" in every area of job functioning except "[m]aintain[ing] personal appearance," for which Plaintiff received a "fair" rating. (*Id.* at 375-76) As clinical support for his assessment, Dr. Vora cited poor thought organization, comprehension, and memory; emotional instability; and "depression, compromised cognitive skills, crying spells, anxiety, helplessness, hopelessness." (*Id.*

---

[2] The GAF scale is a method of considering psychological, social, and occupational function on a hypothetical continuum of mental health. The GAF scale ranges from 0 to 100, with serious impairment in functioning at a score of 50 or below. Scores between 51 and 60 represent moderate symptoms or moderate difficulty in social or occupational functioning.

5

at 376)

The ALJ gave little weight to Dr. Vora's conclusions, explaining that "the basis for [Dr. Vora's] opinion is not clear from the evidence of record" and that Dr. Vora "appears not to have examined [Plaintiff] for several years before the completion of [the check-box questionnaire.]" (Doc. 8-2, ID 50) The ALJ stated that although Dr. Vora includes extreme mental limitations, his January 2014 report noted no serious cognitive deficits and indicated only moderate symptoms. Finally, the ALJ stated that Dr. Vora's opinion was "explicitly inconsistent" with the contemporaneous psychological examinations, and was not consistent with the record as a whole or with objective medical findings. (*Id.*)

### *4. Plaintiff's Credibility*

After considering the record, Plaintiff's testimony, and her credibility, the ALJ concluded:

> The evidence of record is not strongly supportive of [Plaintiff's] allegations regarding the limiting effects of her impairments. . . . Indeed, her CTS appears to have remained stable for years: EMG studies from 2002 to 2012 continue to suggest "moderate" levels of disease, despite the fact that the [Plaintiff] worked for much of that period. . . . Again, the record suggests that her CTS remained stable for years and this condition does not prevent some use of the hands or performance of some full-time work activities. . . . On the whole, [Plaintiff's] physical impairments appeared generally stable during the relevant period, and there is no reasonable indication that they prevented her from performing some significant physical activity. [Plaintiff's] allegations of very serious problems using the hands and other physical difficulties are not consistent with this evidence and are not wholly credible.

(Doc. 8-2, ID 49)

### **B. Plaintiff's Objections to the R&R**

6

Plaintiff advances three primary objections to the ALJ's decision. First, she says that the ALJ erred in finding that her accommodated clerical work constituted SGA. Second, she says that the ALJ erred in finding that she was able to use her hands on a frequent basis. Finally, she says the ALJ erred by failing to give controlling weight to her treating psychiatrist, Dr. Vora, who offered opinions supporting a finding of disability. Each objection is addressed in turn.

### III. STANDARD OF REVIEW

Judicial review of a Social Security disability benefits application is limited to determining whether the commissioner "has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). A reviewing court may not resolve conflicts in the evidence or decide questions of credibility. *Brainard v. Sec'y of HHS*, 889 F.2d 679, 681 (6th Cir. 1989). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is "more than a scintilla but less than a preponderance." *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 299 (1938). The Substantiality of the evidence must be based upon the record taken as a whole. *Futernick v. Richardson*, 484 F.2d 647, 649 (6th Cir. 1973). The substantial evidence standard "presupposes that there is a zone of choice within which the decision makers can go either way, without interference with the courts." *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986). The portions of the R&R that the claimant finds objectionable are reviewed *de novo*. 28 U.S.C. § 636(b)(1)(c); *Smith v. Detroit Fed'n of Teachers,*

*Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).

## IV. DISCUSSION

### A. Substantial Gainful Activity

Plaintiff says that the ALJ erred in finding that her clerical job constituted substantial gainful activity (SGA). Specifically, Plaintiff says that her clerical work from June 2006 to June 2012 does not constitute SGA under Social Security regulations because it was not actual work but "sheltered" or "accommodated" work. She says that the ALJ ignored her testimony regarding her clerical duties and erred in finding that her work during this period did not constitute "sheltered work" under the Social Security regulations. This argument lacks merit.

#### *1. Controlling Authority*

To establish entitlement to benefits based on disability, Plaintiff must prove that she is unable "to engage in any [SGA] by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). The ALJ used several guides to decide whether the work a claimant has done constitutes SGA. 20 CFR 404.1574(a).

Social Security regulations state that work that is considered "sheltered work" may not constitute SGA, if it can be shown that the claimant is not truly earning the amounts he or she is being paid. 20 C.F.R. § 404.1574(a)(3). Whether the work constitutes "sheltered work" depends on the "reasonable worth of the work, rather than

8

on the actual amount of the earnings." *Id.* Thus, "the presumption of [SGA] . . . can be rebutted by evidence of the nature of the applicant's work, the conditions of employment and the adequacy of the applicant's performance." *Dinkel v. Sec'y of Health & Human Servs.*, 910 F.2d 315, 319 (6th Cir. 1990).

### *2. The ALJ's Conclusions Are Well Supported*

At the administrative hearing, Plaintiff testified regarding her duties while in the clerical position, and argued that this constitutes sheltered work. The ALJ stated, however, that such an analysis must consider the nature of the work, and generally requires an employer's report, which was not included here. (Doc. 8-2, ID 92-94) In addition, the ALJ stated that Plaintiff's arguments concerning sheltered work is separate and unrelated to the issue at hand—*i.e.*, whether Plaintiff retains the RFC to perform a limited range of work. (*Id.*) The ALJ concluded that Plaintiff was engaged in SGA through June 8, 2012—a period which includes her time working in the clerical position. The ALJ further stated that Plaintiff's ability to work during this period supported the conclusion that her CTS was not a disability. (*Id.* at 44) The ALJ's conclusions are well supported.

To begin, Plaintiff did not produce an employer's report documenting her work responsibilities during her six years of clerical work. She offered no evidence, other than her testimony, which would allow the ALJ to find that she was not truly earning the amounts she was being paid. The ALJ was correct in recognizing that Plaintiff's subjective explanations could not overcome the burden necessary to demonstrate that her clerical duties constituted sheltered work. *See, e.g.*, *Dinkel v. Sec'y of Health &*

9

*Human Servs.*, 910 F.2d 315, 319 (6th Cir. 1990) (finding that the claimant failed to meet the burden of showing that her work was sheltered work pursuant to 20 C.F.R. § 404.1574(a)(3))).

Second, the ALJ was in correct in noting that "sheltered work" is a separate issue from whether Plaintiff is disabled. Thus, even if Plaintiff's duties were to constitute sheltered work, the ALJ's finding that Plaintiff is not disabled cannot be disturbed if the record as a whole supports that determination. *See Dekruger v. Comm'r of Soc. Sec.*, No. 08-10410, 2009 WL 596123, at *11-12 (E.D. Mich. Mar. 9, 2009) (even if claimant is correct that past work was not SGA, the error is harmless where the record as a whole supports the determination that the claimant was not disabled). Thus, any error made by the ALJ in this respect is harmless.

Finally, the ALJ reached her decision regarding Plaintiff's SGA upon finding that Plaintiff's statements at the hearing were not fully credible. Courts commonly defer to an ALJ's credibility finding because "[t]he opportunity to observe the demeanor of a witness, evaluating what is said in the light of how it is said, and considering how it fits with the rest of the evidence gathered before the person who is conducting the hearing, is invaluable, and should not be discarded lightly." *Keeton v. Comm'r of Soc.Sec.*, 583 Fed. Appx. 515, 531 (6th Cir. 2014) (quoting *Beavers v. Sec. of Health, Ed. & Welfare*, 577 F.2d 383, 387 (6th Cir. 1978)).

For these reasons, the ALJ's finding that Plaintiff was engaged in SGA through June 8, 2012 is well supported by evidence in the record.

### B. The ALJ's RFC Analysis

Next, Plaintiff objects to the ALJ's RFC finding that Plaintiff is capable of frequent handling, fingering, and feeling with her hands with no continuous writing. Plaintiff says that "the medical records as well as Plaintiff's testimony indicates that Plaintiff, at most would be able to use her hands on an occasional basis." (Doc. 16, ID 455) Plaintiff further says that the medical records "clearly establish" she is suffering from CTS that causes severe limitations in the use of her hands. (*Id.*) This argument lacks merit.

To begin, Plaintiff relies on the very evidence that the ALJ found was not entirely credible—her own subjective testimony. *See* Part II.A.4, *supra*. The ALJ declined to credit Plaintiff's subjective statements, explaining that the objective medical evidence of record and Plaintiff's own reported daily activities do not reach the degree of claimed limitations that the record credibly supports. *See Stanley v. Sec'y of Health & Human Servs.*, 39 F.3d 115, 118-19 (6th Cir. 1994) ("[T]he ALJ is not obliged to incorporate unsubstantiated complaints into [his or her analysis]"); *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993) (holding that the ALJ is required to incorporate only those limitations that the record credibly supports).

The ALJ considered a wide range of evidence regarding Plaintiff's physical limitations. However, the record repeatedly shows that Plaintiff's symptoms related to CTS were only "moderate" in severity and only "moderately limited her activities." *See* Part II.A.2, *supra*. The ALJ noted that that the only doctor to specifically address Plaintiff's handling ability was state examiner Dr. Nguyen, who determined that she was capable of frequent handling. The ALJ properly determined that Plaintiff's condition has remained relatively stable since 2002, and did not deteriorate despite her complaints of

11

worsening pain.

ALJ properly determined that Plaintiffs allegations of serious limitations in using her hands were not consistent with the evidence of record. The ALJ's determination is therefore supported by substantial evidence and should not be disturbed.

### C. Dr. Vora's Opinion

Finally, Plaintiff objects to the ALJ's rejection of Dr. Vora's opinion. Plaintiff says that the "ALJ is not empowered to reject the opinion of a treating physician." (Doc. 16, ID 455) Plaintiff says that the ALJ violated the Treating-Source Rule by giving little weight to Dr. Vora's January 30, 2014, medical source statement, which indicated that Plaintiff's mental symptoms are so severe she has poor or no significant ability to perform even basic mental work. (Doc. 8-2, ID 50) For several reasons, this argument is without merit.

#### *1. Controlling Authority*

The Social Security Administration defines three types of medical sources: non-examining sources, non-treating (but examining) sources, and treating sources. *See* 20 C.F.R. § 404.1502; *see also Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 514 (6th Cir. 2010). A physician qualifies as a treating source if there is an "ongoing treatment relationship" such that the claimant sees the physician "with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the] medical condition." 20 C.F.R. § 404.1502.

Under the "Treating-Source Rule," the opinions of a claimant's treating physician are generally given more weight than those of non-treating and non-examining

physicians. 20 C.F.R. § 404.1527(c)(2). When an ALJ does not give a treating source's opinion controlling weight, the ALJ must consider a number of factors in considering how much weight is appropriate.[3] *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007).

Further, the ALJ is procedurally required to give "good reasons" for discounting treating physicians' opinions, which are "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Rogers*, 486 F.3d at 242 (quoting Soc. Sec. Rul. 96–2p, 1996 WL 374188, at *4). "However, this requirement only applies to *treating* sources." *Ealy*, 594 F.3d at 514 (citation omitted) (emphasis in original).

### 2. Dr. Vora's Opinion Is Not Entitled to Controlling Weight

The ALJ appropriately determined that Dr. Vora's opinion was not entitled to controlling weight. The record shows that the ALJ considered several factors in evaluating the weight of Dr. Vora's opinions and provided numerous reasons supporting his conclusion.

To begin, the ALJ concluded that Dr. Vora's medical source statement did not qualify as an opinion from a treating source that is entitled to controlling weight. "A physician qualifies as a treating source if the claimant sees her 'with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the] medical condition.' " *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876

---

[3] The length of the treatment relationship with the physician, the nature and extent of that relationship, the frequency of examination, the supportability of the physician's opinion, the consistency of that opinion with the record as a whole. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).

(6th Cir. 2007) (alteration in original) (quoting 20 C.F.R. § 404.1502). Here, the ALJ explained that Dr. Vora had not examined Plaintiff in nearly two and a half years, between September 2011 and January 2014. Because of this long gap in treatment, Plaintiff cannot demonstrate the frequency of treatment necessary to show that Dr. Vora is a treating source.

Moreover, the ALJ determined that Dr. Vora's opinion did not comport with his own notes from that examination, and that his assessment appeared to be "explicitly inconsistent with the contemporaneous examination report of record." (Doc. 8-2, ID at 50) The ALJ noted that in the medical source statement, Dr. Vora included extreme mental limitations; however, the only examination report of Dr. Vora dating from January 2014 describes no extreme mental deficits. The ALJ also concluded that Dr. Vora's statements concerning the severity and restricting effects of Plaintiff's depression and anxiety should not be strongly weighed because Dr. Vora provided little narrative support for his opinions, and his checked box responses in his medical form did not follow logically from his clinical findings.

Finally, the ALJ gave limited weight to Dr. Vora's opinion because his "opinion [did] not appear to be consistent with objective medical findings, given the evidence of record and the few examinations." (Doc. 8-2, ID at 51) *See Bogle v. Sullivan*, 998 F.2d 342, 345, 347-48 (6th Cir. 1993) (holding that the ALJ can discount treating source opinion that is unsupported by objective evidence or inconsistent with other substantial evidence, including the physician's own findings). The ALJ found that Plaintiff's primary care physician records did not report symptoms of depression or anxiety that could

reasonably be expected to result in the extreme limitations noted by Dr. Vora.

The ALJ provided good reasons for discounting Dr. Vora's opinion, which are supported by substantial evidence in the record. Plaintiff's objection therefore cannot prevail.

## VI. CONCLUSION

For the reasons stated above, the R&R is adopted as the findings and conclusions of the Court, supplemented as above. Plaintiff's motion for summary judgment has therefore been denied, and the Commissioner's motion for summary judgment granted. This case is DISMISSED.

SO ORDERED.


Dated: 8/11/2015         s/Avern Cohn
                         AVERN COHN
                         UNITED STATES DISTRICT JUDGE

15